IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID E. RAY,**

        **Plaintiff,**

**v.**                                            **CIV-07-0415 LAM**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Decision of the Commissioner* (*Doc. 15*), filed in this case on December 17, 2007. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion (*Doc. 15*) and his memorandum brief in support of the motion (*Doc. 16*), Defendant's response to the motion (*Doc. 22*), Plaintiff's reply in support of the motion (*Doc. 23*), the record of this case and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R*."). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On April 9, 2004, Plaintiff David E. Ray filed applications for disability insurance and supplemental security income benefits.[1] (*R. at 51-54, 494-496.*)  In Plaintiff's application for disability insurance benefits, he alleged a disability since March 10, 2004. (*R. at 51.*)  In Plaintiff's application for supplemental security income benefits, he alleged a disability since February 1, 2004. (*R. at 494.*)  In connection with his applications, Plaintiff alleged a disability due to arthritis in his back, degenerative disc disease, a bulging disc against nerves, scar tissue around nerves from previous back surgery, back spasms and severe back pain. (*R. at 58.*)  There is also evidence in the *Record* that Plaintiff has suffered from, or complained of, migraine and cluster headaches, depression, mood disorder, high blood pressure, bladder cancer and shoulder pain. (*R. at 31, 60, 63, 106-110, 124-127, 131, 138, 140, 142-145, 156-157, 161, 163, 190-193, 205-208, 230-231, 233-234, 246, 251-252, 274, 283, 286, 297, 301-304, 325-328, 331-333, 337-338, 384-386, 404-405, 408, 416, 423, 460- 462, 469.*)  Plaintiff's applications were denied at the initial and reconsideration levels. (*R. at 25-26, 497, 502.*)

Plaintiff requested a hearing and an administrative law judge (hereinafter "ALJ") conducted a hearing on June 12, 2006.  (*R. at 507.*)  Plaintiff was present and testified at the hearing. (*R. at 507-509, 511-525.*)  Plaintiff was represented by counsel at the hearing.  (*R. at 507, 509.*)  Nathan Dean, a vocational expert (hereinafter, "VE") retained by the Commissioner, also was present and testified at the hearing.  (*R. at 507-509, 525-533.*)  On August 16, 2006, the ALJ issued his decision in which he found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, because Plaintiff could perform other work that exists

---

[1] Plaintiff has a protective filing date of February 20, 2004, for disability insurance and supplemental security income benefits.  (*R. at 493.*)

in significant numbers in the national economy, namely work as a cashier, a small parts assembler and a hand packager.[2]  (*R. at 21-22.*)  With regard to Plaintiff's applications for disability insurance and supplemental security income benefits, the ALJ concluded that Plaintiff was not entitled such benefits because he was not disabled under relevant sections of the Social Security Act.  (*R. at 22.*)

After the ALJ issued his decision, Plaintiff filed a request for review of the ALJ's decision that was received by the Appeals Council on October 12, 2006.  (*R. at 12.*)  On February 23, 2007, the Appeals Council issued its decision denying his request for review, making the ALJ's decision the final decision of the Commissioner in his case.  (*R. at 7-9.*)  On April 27, 2007, Plaintiff filed his complaint in this case.[3]

## II.  Standard of Review

---

[2] The ALJ made the following specific findings, *inter alia*, with regard to Plaintiff: (1) he met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through at least the date of the ALJ's decision; (2) he had not engaged in substantial gainful activity since March 10, 2004; (3) he had impairments which, in combination, were severe based on the requirements in the regulations consisting of "a history of left shoulder surgery, status post motorcycle accident with multiple fractures in right lower extremities, status post lumbar surgery in June of 2002, status post bladder cancer and surgeries to remove tumors, chronic low back pain, migraine headaches, major depression and an anxiety disorder[;]" (4) the severity of his impairments, considered singly or in combination, did not meet, or medically equal, the criteria of any of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1; (5) his allegations regarding his pain and limitations and their impact on his ability to work were not fully credible "for the reasons set forth in the body of the decision;" (6) he retained the physical residual functional capacity (hereinafter "RFC") to perform unskilled light work with restrictions; (7) he was unable to perform his past relevant work which included work as a motorcycle mechanic, truck mechanic, forklift operator, small engine mechanic and diesel mechanic helper; (8) he was a "younger individual" within the meaning of the regulations at all times relevant to the decision; (9) he had a general education diploma (hereinafter, "GED"); (10) the VE gave examples of jobs that an individual with Plaintiff's vocational characteristics and limitations could perform, namely, the unskilled jobs of cashier, small parts assembler and hand packager; (11) the vocational expert cited a significant number of jobs; and (12) Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision.  (*R. at 16, 21-22.*)

[3] *See* **Civil Rights Complaint** (*Doc. 1*).  Plaintiff, who is now represented by counsel, was *pro se* when he commenced this lawsuit and he filed his complaint on a standard form used for filing civil rights complaints pursuant to 42 U.S.C. § 1983.  However, the substance of the allegations in Plaintiff's complaint indicate that he brought this action to appeal a decision by the Commissioner to deny his claims for disability benefits.  Consequently, the Court characterized Plaintiff's complaint as one seeking judicial review of an administrative decision by Defendant as provided in 42 U.S.C. § 405(g) and set a briefing schedule for that review.  *See* **Order Setting Briefing Schedule** (*Doc. 11*).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).

For purposes of disability insurance benefits and supplemental security income, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential

evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920. At the first four steps of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful activity; that he has a medically severe impairment or combination of impairments; and that either his impairment(s) meet or equal one of the presumptively disabling impairments listed in the regulations under 20 C.F.R., Part 404, Subpart P, Appendix 1,[4] or that he is unable to perform his past relevant work. *See Grogan v. Barnhart*, 399 F.3d at 1261; *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Id.*

## III.  Plaintiff's Age, Education, Work Experience and Medical History; Vocational Expert

Plaintiff was born on September 21, 1961, which made him forty-four years old on the date of the ALJ's decision. (*R. at 512.*) At the administrative hearing, Plaintiff testified that he had a GED and that he had studied at the Motorcycle Mechanics Institute. (*R. at 513, 517.*) Plaintiff reported past work experience that included jobs working as a motorcycle mechanic, truck and forklift mechanic, small engine mechanic, and diesel mechanic. (*R. at 59, 76-80, 514-517, 526.*)

Plaintiff's medical records document his treatment by the University of New Mexico Health Sciences Center, the Desert Samaritan Medical Center, the Southwest Center for Neurological Surgeons, the Banner Health Systems Mesa Lutheran Medical Center, Jeffrey S.

---

[4]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see also* 20 C.F.R. §§ 416.909, 416.920(a)(4)(iii) and 416.920(d).

Levine, M.D., Gregory L. Ellison, M.D.,[5] and Marc Center Behavioral Health Services.  (*R. at 139-242, 250-333, 384-492.*)  Many of these records document Plaintiff's treatment by Dr. Ellison.  (*R. at 253-255, 257-322, 473-492.*)  Plaintiff testified at the administrative hearing that Dr. Ellison was his primary care physician.  (*R. at 525.*)  The records of Plaintiff's treatment by Dr. Ellison include a completed "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form for Plaintiff, dated May 28, 2004, and a completed "Physical Examination Report Format"/"Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form for Plaintiff, dated November 23, 2004.  (*R. at 316-322.*)

The *Record* shows that Dr. Ellison referred Plaintiff for two magnetic resonance imaging (hereinafter, "MRI") studies of his lumbar spine.  The first MRI study, performed at Desert Open MRI on May 3, 2002, in which a comparison was made with an earlier examination in 2001, included summary findings of: (1) "[i]nterval appearing small central L5-S1 disc protrusion;" (2) "[u]nchanged L3-4 and L4-5 central canal stenosis and to a lesser degree at the L2-3 level;" (3) "[u]nchanged L4-5 broad based disc bulge;" and (4) "[d]egenerative endplate facet and disc changes of the lumber spine [as noted in the report] with otherwise no significant adverse changes when compared to the previous examination."  (*R. at 308-309.*)  The second MRI study, performed at Desert Open MRI on February 17, 2004, included these impressions: (1) "[s]tatus post L3 through L5 laminectomy;" (2) "[g]eneralized degenerative disc disease, L2-3 through L5-S1;" (3) "[p]ost-surgical epidural scarring bilaterally at L3-4, L4-5 and L5-S1, encompassing the bilateral L4, L5 and

---

[5]The parties agree that the ALJ incorrectly referred to Dr. Ellison as "Dr. Levinson" in his decision.  *See* Plaintiff's ***Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand Decision of the Commissioner*** (*Doc. 16*) at 8 n.5; ***Defendant's Response to Plaintiff's Motion to Reverse/Remand*** (*Doc. 22*) at 4 n.1.  The Court agrees and construes all references to "Dr. Levinson" in the ALJ's decision as being references to Dr. Ellison.

S1 nerve roots;" (4) "[s]mall central disc protrusion at L5-S-1;" and (5) "[n]o central spinal stenosis." (*R. at 300.*)

Plaintiff's medical records also include reports of consultative psychological evaluations of Plaintiff performed by psychologist James E. Huddleston, Ph.D., in June of 2004, and psychologist Wayne R. General, Ph.D., in December of 2004. (*R. at 243-249, 334-342.*) Dr. Huddleston's report includes a completed "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form for Plaintiff, dated June 28, 2004. (*R. at 248-249.*) Dr. General's report includes a completed "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form for Plaintiff, dated January 6, 2005. (*R. at 334-342.*) Additionally, Plaintiff's medical records include the report of a consultative physical exam of Plaintiff performed by physician Malcolm McPhee, M.D., on December 20, 2004. (*R. at 343-347.*) The *Record* also includes a completed "Psychiatric Review Technique" form for Plaintiff, dated August 12, 2004, by state agency psychologist Paul Tangeman, Ph.D., and a completed "Psychiatric Review Technique" form for Plaintiff, dated January 11, 2005, by state agency physician Jack A. Marks, M.D. (*R. at 348-361, 362-375.*) The *Record* includes a completed "Physical Residual Functional Capacity Assessment" form for Plaintiff, dated January 12, 2005, by state agency physician R. Hirsch, M.D. (*R. at 376-383.*)

Plaintiff's medical records indicate that he had back surgery on June 25, 2002. (*R. at 238-240.*) The procedures during this surgery included a lumbar laminectomy of L3, L4, L5, S1 (partial) and L-2 (partial) and decompression of nerve roots at L2-3, L3-4, L4-5 and L5-S1. (*R. at 238-240.*) Additionally, Plaintiff's medical records show that he has a history of bladder cancer and a history of multiple surgeries for bladder cancer. (*R. at 156-157, 163-164, 190-193, 205-208, 230-233.*)

Plaintiff also reports a history of left shoulder surgery.[6] (*R. at 89, 132, 250, 343*.) As noted above, VE Nathan Dean testified at Plaintiff's administrative hearing. (*R. at 525-533.*) To the extent relevant, Plaintiff's medical records and the testimony of the VE are discussed in more detail below.

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, Plaintiff contends that the ALJ erred at step five of the sequential evaluation process by: (1) giving little, if any weight, to the opinions of Plaintiff's treating physician, Dr. Ellison, that Plaintiff was limited to less than sedentary work; (2) rejecting the opinion of consulting psychologist Wayne R. General, Ph.D., that Plaintiff had moderate limitations in his ability to do certain work-related activities; and (3) improperly assessing Plaintiff's credibility regarding the limiting effects of his migraine headaches and back pain.[7] As relief, Plaintiff asks the Court to reverse the Commissioner's decision, remand this case for further proceedings and award Plaintiff his reasonable attorney's fees and costs.[8] Defendant argues that the decision of the ALJ should be affirmed because he applied the correct legal standards and his decision is supported by substantial evidence.[9]

---

[6]The Court finds no report of left shoulder surgery in the *Record*; however, there are reports in the *Record* of a diagnostic left shoulder arthrogram and MRI, both performed on June 14, 2004. (*R. at 273-274.*)

[7]*See* **Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand Decision of the Commissioner** (*Doc. 16*) at 8-12.

[8]*Id.* at 12; *see also* **Motion to Reverse or Remand Decision of the Commissioner** (*Doc. 15*) at 1-2.

[9]*See* **Defendant's Response to Plaintiff's Motion to Reverse/Remand** (*Doc. 22*) at 12.

8

### *A. ALJ's Consideration of Dr. Ellison's Opinions*

Plaintiff was treated for his back condition over a long period of time by Dr. Ellison. (*R. at 253-255, 257-322, 473-492.*) Plaintiff contends that Dr. Ellison is a treating physician and that the ALJ erred in giving little, if any, weight to Dr. Ellison's medical opinions regarding the functional limitations of Plaintiff's back condition. The opinions at issue are contained in the two "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" forms (hereinafter, "MSS Form(s)") that were completed by Dr. Ellison for Plaintiff dated May 28, 2004, and November 23, 2004, respectively.[10] (*R. at 316-322.*) Defendant does not dispute Plaintiff's contention that Dr. Ellison is a treating physician, but rather argues that the ALJ properly evaluated Dr. Ellison's opinions.

In the first MSS Form at issue, dated May 28, 2004, Dr. Ellison opined, *inter alia*, that Plaintiff suffered from "failed back syndrome"[11] and "rotator cuff tear." (*R. at 317.*) He further opined that in an eight-hour workday, Plaintiff could lift less than ten pounds occasionally (generally no more than two hours) and could stand and/or walk less than two hours in an eight-hour workday. (*R. at 316.*) He also opined that Plaintiff could sit for only one hour in an eight-hour

---

[10]The Court notes that each MSS Form appears to be a form promulgated by the Arizona Department of Economic Security's Disability Determination Service Administration. (*R. at 316, 319.*) The MSS Form completed on May 28, 2004, contains the following instructions to the physician completing the form: "Please provide a medical assessment of your patient's functional capabilities. WE NEED THIS IN ADDITION TO YOUR NARRATIVE REPORT AND/OR COPIES OF YOUR OFFICE RECORDS. This is not to indicate what the patient states he/she can do, but what YOU, in your best medical judgement, feel he/she can still do, based on substantiated objective findings." (*R. at 316.*) The MSS Form completed on November 23, 2004, contains the following instructions to the physician completing the form if the physician feels his patient's condition(s) will impose any limitations for twelve continuous months: "[P]lease complete the rest of this form with those limitations that you think have been or will be present for 12 months. WE NEED THIS IN ADDITION TO YOUR NARRATIVE REPORT AND/OR COPIES OF YOUR OFFICE RECORDS. Do not indicate what the patient states he/she can do, but what YOU, in your best medical judgment, feel he/she can do, based upon substantiated objective findings. Do not consider the patient's age, sex or work experience." (*R. at 320.*)

[11]"Failed Back Syndrome" is a general term that refers to chronic severe pain experienced after unsuccessful surgery for back pain." New York Presbyterian Hospital (the University Hospital of Columbia and Cornell) at "http://www.nyp.org/health/herniated-disc.html".

workday and that he could never climb, balance, stoop, kneel, crouch, crawl or reach.  (*R. at 317.*)  He opined that Plaintiff was unlimited in his ability to handle, finger, feel, see, hear and speak, and that he was subject to environmental restrictions related to heights and moving machinery.  (*R. at 317.*)  He attributed Plaintiff's restrictions to "severe back pain," "degenerative disc disease," "post-laminectomy failed back syndrome" and "rotator cuff tear."  (*R. at 317.*)

In the second MSS Form at issue, dated November 23, 2004, Dr. Ellison opined, *inter alia*, that Plaintiff suffered from "lumbar radiculopathy, facet syndrome, post-laminectomy."[12]  (*R. at 320.*)  He further opined that in an eight-hour day Plaintiff could occasionally (generally no more than two hours) lift less than ten pounds, and that he could stand and/or walk less than two hours in an eight-hour day.  (*R. at 320.*)  He also opined that Plaintiff could sit for only two to four hours in an eight-hour day, and that Plaintiff needed to alternate sitting and standing and that this position change would have to be for ten minutes.  (*R. at 320-321.*)  He opined that Plaintiff could never stoop, kneel, crouch or crawl; could occasionally (no more than two hours per day) climb and balance; could frequently (two to six hours per day) reach; and could constantly handle, finger, feel and grasp.  (*R. at 321.*)  In this MSS Form, Dr. Ellison stated that he first saw Plaintiff as a patient on March 28, 2001, and that he had seen Plaintiff most recently on November 16, 2004.  (*R. at 320.*)

---

[12]"Radiculopathy" is a disorder of the spinal nerve roots.  *See Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 1503.  "Facet syndrome," also known as "facet joint syndrome," "refers to pain that occurs in the facet joints" which are "joints [that] occur in pairs at the back of each vertebra."  Cleveland Clinic Center for Consumer Health Information at "http://www.clevelandclinic.org/health/healthinfo/docs/4000/4064."

An ALJ must follow a sequential analysis in evaluating the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

> In the first step of this analysis, he should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. If the answer to both these questions is "yes," he must give the opinion controlling weight. But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight.

*Id.* (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In deciding whether the opinion of a treating physician should be rejected altogether or assigned some lesser weight, the relevant factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). After considering the relevant factors, an ALJ must "always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). And if the ALJ disregards the opinion of a claimant's treating physician completely, he must set forth "specific, legitimate reasons" for doing so. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

In this case, the ALJ acknowledged in his decision that he considered Dr. Ellison's opinions in the MSS Forms. (*R. at 20.*) It is clear from the ALJ's decision that he did not give controlling weight to Dr. Ellison's opinions in the MSS Forms. (*R. at 20.*) In his decision, the ALJ failed to discuss this first step of the analysis of treating physician opinions and failed to articulate his reasons for not giving the opinions controlling weight. Moreover, contrary to the requirements for the second step of the analysis, the ALJ failed to articulate what weight, if any, he gave to Dr. Ellison's opinions or state whether he rejected the opinions entirely based on an evaluation of the factors set forth in 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Dr. Ellison's opinions in the MSS Forms regarding Plaintiff's functional limitations are highly relevant to the ALJ's assessment of Plaintiff's RFC and these opinions are inconsistent with the ALJ's determination of Plaintiff's RFC. The ALJ found that Plaintiff retained the RFC to perform unskilled light work with restrictions. (*R. at 22.*) The functional limitations in Dr. Ellison's MSS Forms, on the other hand, would limit Plaintiff to less than a full range of sedentary work.[13]

Here, the ALJ gave mostly conclusory reasons for discounting Dr. Ellison's opinions in the MSS Forms. The ALJ noted an inconsistency in the MSS Forms regarding the number of hours that Plaintiff could sit in a workday (one hour per day in May,[14] *versus* two to four hours per day in November), but failed to discuss the implications of this inconsistency for Plaintiff's RFC (under

---

[13]The exertional limitations for light and sedentary work are set forth in Social Security Administration regulations. Light work requires, *inter alia*, the ability to lift a maximum of twenty pounds at one time and requires "a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Sedentary work requires, *inter alia*, the ability to lift a maximum of ten pounds at one time and is defined as a job which involves sitting, although "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a). To perform a full range of sedentary work, "an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." Social Security Ruling 96-9p, 1996 WL 374185 at *6.

[14]In this reference to Dr. Ellison's first MSS Form, the ALJ incorrectly gives the month of the MSS Form as April instead of May. (*R. at 20, 316-317.*)

both assessments, Plaintiff would be limited to less than sedentary work). (*R. at 20.*) Without discussion, the ALJ cited an absence of clinical findings in Dr. Ellison's medical records, although his medical records are replete with clinical findings. (*R. at 20.*) Without discussion or reference to the medical records, the ALJ concluded that Dr. Ellison's opinions in the MSS Forms were inconsistent with unspecified "objective evidence showing only degenerative disc disease," even though this conclusion is contradicted by the report of Plaintiff's MRI in February of 2004, which included findings of "[p]ostsurgical epidural scarring bilaterally at L3-4, L4-5 and L5-S1, encompassing the bilateral L4, L5 and S1 nerve roots" and a "small central disc protrusion at L5-S1," in addition to a finding of "[g]eneralized degenerative disc disease at L2-3 through L5-S1." (*R. at 20, 300.*) The ALJ also cited Dr. Ellison's alleged failure to refer Plaintiff to a neurosurgeon, as a reason for discounting his opinions; however, the medical records show that Dr. Ellison referred Plaintiff to a neurosurgical group for evaluation of his back pain in June of 2002, and suggest that Dr. Ellison referred Plaintiff to neurosurgeon Marc A. Letellier, M.D., of the same neurosurgical group, in February of 2004. (*R. at 20, 234, 298.*)

Defendant acknowledges that the ALJ did not explicitly weigh Dr. Ellison's opinions expressed in the MSS Forms. *See **Defendant's Response to Plaintiff's Motion to Reverse/Remand*** (*Doc. 22*) at 7. In spite of this, Defendant argues, citing *Causey v. Barnhart*, No. 03-7131, 109 Fed. Appx. 375, 378 (10th Cir. Sept. 23, 2004) (unpublished), that the ALJ's decision should be affirmed because the decision implicitly shows that the ALJ gave little weight to Dr. Ellison's opinions. *Id.* In support of this argument, Defendant's response brief discusses evidence in the *Record* that he contends undermines Dr. Ellison's opinions. *Id.* at 4-7. The Court finds this case to be distinguishable from *Causey*. In this case, Dr. Ellison's opinions in the MSS Forms are more than a single check-the-box conclusion and the ALJ's decision does not clearly show that he

considered the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) for evaluation of a treating physician opinion. Nor does the decision clearly specify what evidence the ALJ relied on in discounting Dr. Ellison's opinions in the MSS Forms.

Additionally, Defendant argues, citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), that any deficiency in the ALJ's consideration of Dr. Ellison's opinions in the MSS Forms was harmless error. *See* **Defendant's Response to Plaintiff's Motion to Reverse/Remand** (*Doc. 22*) at 7-8. Harmless error analysis may be available to supply a missing dispositive finding "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d at 1145. Here, there is conflicting evidence regarding Plaintiff's functional limitations and the ALJ's analysis of Dr. Ellison's opinions does not clearly indicate what material the ALJ relied on in discounting or rejecting those opinions. Moreover, Defendant would have the Court evaluate and re-weigh the evidence and substitute its judgment for that of the agency which it cannot do. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004), citing *Casias v. Sec'y. of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Thus, harmless error analysis is not appropriate in this case.

The Court finds that the ALJ failed to articulate what weight, if any, he gave to Dr. Ellison's opinions in the MSS Forms, and also failed to adequately explain, with reference to evidence in the *Record*, the specific reasons for assigning a weight to the opinions or rejecting the opinions outright. This was legal error that warrants remand of this case. When disability is denied, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, 1996 WL 374188 at *5; *see also Hulsey v. Astrue*, No. 07-5150, 2008 WL 2265260, at *3 (10th Cir. June 4, 2008) (unpublished). The Court will not speculate, as Defendant urges it to do, as to the weight the ALJ gave to Dr. Ellison's opinions or the reasons for that weight. Accordingly, the Court will remand this case to the Commissioner for an evaluation of Dr. Ellison's opinions in the MSS Forms which complies with applicable law, and for a re-assessment of Plaintiff's RFC based on the ALJ's consideration of those opinions. The Court necessarily expresses no opinion as to the weight that should be given to Dr. Ellison's opinions in the MSS Forms. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (explaining that courts "should not properly engage in the task of weighing evidence in cases before the Social Security Administration.").

### B. *ALJ's Consideration of Consulting Psychologist Wayne R. General's Opinion*

Plaintiff argues that the ALJ erred in rejecting the opinion of consulting psychologist Wayne R. General, Ph.D., that Plaintiff had numerous moderate limitations in his ability to do certain work-related activities. *See **Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand Decision of the Commissioner*** (*Doc. 16*) at 11-12. Plaintiff argues that the ALJ improperly rejected Dr. General's opinion by failing mention or discuss in his decision the moderate limitations that Dr. General ascribed to Plaintiff which the VE testified would preclude sustained work. *Id.*

Dr. General performed a consultative mental examination of Plaintiff for the Arizona Department of Economic Security/Disability Determination Service Administration on December 13, 2004. (*R. at 334.*) Dr. General diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Moderate." (*R. at 337.*) The report of Dr. General's examination includes a

"Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form in which Dr. General opined that Plaintiff had moderate limitations (meaning "fair/limited but not precluded") in his ability to "carry out detailed instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "work in coordination with or proximity to others without being distracted by them;" "complete a normal workday and workweek without interruptions from psychologically based symptoms and [] perform at a consistent pace without an unreasonable number and length of rest periods;" "interact appropriately with the general public;" "maintain socially appropriate behavior and [] adhere to basic standards of neatness and cleanliness;" and "set realistic goals or make plans independently of others."  (*R. at 340-342.*)  In his report, Dr. General stated that Plaintiff's prognosis for returning to the work force was "fair," and that with "supportive counseling" and "targeted psychopharmacological intervention" Plaintiff's cognitive skills would improve and "he would probably be capable of returning to the work force."  (*R. at 337-338.*)  Dr. General concluded, apparently with reference to the counseling and psychopharmacological intervention, that "[i]t is likely that these interventions would not require a full year to accomplish."  (*R. at 338.*)  Furthermore, Dr. General checked "no" on the mental MSS form in response to a question asking whether he felt that Plaintiff's condition(s) had or will "impose any limitations for 12 months."  (*R. at 339.*)

At the administrative hearing, Plaintiff's attorney propounded a hypothetical question to the VE, asking whether a person with most of the foregoing moderate limitations assessed by Dr. General would have "the ability to sustain work on a regular and continuing basis . . . [meaning] eight hours a day, five days a week or an equivalent work schedule."  (*R. at 531-532.*)  In response

to this hypothetical question, the VE testified that these limitations would preclude sustained work. (*R. at 532-533.*)

Defendant argues that the Court should disregard Dr. General's opinion regarding Plaintiff's mental limitations because Dr. General also opined that Plaintiff's "mental condition or limitations" would not last twelve months and, therefore, the Court should make a finding that Plaintiff's mental impairment was not disabling. *See **Defendant's Response to Plaintiff's Motion to Reverse/Remand*** (*Doc. 22*) at 8.[15]

The ALJ discussed Dr. General's opinion very briefly in his decision. He noted that Dr. General evaluated Plaintiff in December of 2004, and diagnosed Plaintiff with "major depressive disorder- recurrent-moderate." (*R. at 19.*) Additionally, the ALJ briefly noted Dr. General's findings that Plaintiff's short-term memory of five minutes was impaired and that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods. (*R. at 20, 337, 340.*) Without discussion or explanation, the ALJ stated in his decision that his RFC assessment of Plaintiff was supported by Dr. General's opinion. (*R. at 20.*) In his decision, the ALJ did not mention or discuss Dr. General's opinion regarding the duration of Plaintiff's limitations and the Court notes that Dr. General's opinion on that subject is somewhat ambiguous.[16]

---

[15]For social security purposes, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

[16]In his narrative report, Dr. General expressed his belief that Plaintiff "would probably be capable of returning to the workforce" with "supportive counseling" and "targeted psychopharmacological intervention" and that "[i]t is likely that these interventions would not require a full year to accomplish." (*R. at 338.*) And in his mental MSS form for Plaintiff, Dr. General checked "[n]o" in response to the question of whether Plaintiff's "condition(s) has or will impose any limitations for 12 months." (*R. at 339.*) However, Dr. General also completed the remainder of the mental MSS form for Plaintiff that was to be completed *only* if Dr. General thought that Plaintiff's condition(s) imposed limitations that "will be present 12 months from onset." (*R. at 339.*)

The Court finds that the ALJ's analysis of Dr. General's medical opinion is legally flawed. Social Security Ruling 96-5p, 1996 WL 374183 at *5, provides that:

> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider . . . when assessing an individual's RFC . . . [and] [a]djudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 and 416.927, *providing appropriate explanations for accepting or rejecting such opinions*. (emphasis added).

Dr. General's opinion constitutes an opinion from a medical source, even though he is in a consulting role. *Id.* at *4 ("Medical source statements are medical opinions submitted by acceptable medical sources, including . . . consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.") (footnote omitted).

On its face, the ALJ's assessment of Plaintiff's RFC appears to conflict with the limitations contained in Dr. General's report, notwithstanding the ALJ's conclusory statement that his RFC assessment was supported by Dr. General's opinion. Moreover, the Court cannot determine, from the scant discussion of Dr. General's opinion in the ALJ's decision, whether the ALJ concluded that Plaintiff's mental impairment did not satisfy the twelve-month duration requirement based on the findings in Dr. General's report. "If an ALJ intends to rely on a non-treating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The Court may not re-weigh the evidence in Dr. General's report or substitute its judgment for that of the ALJ regarding the duration of Plaintiff's mental impairment. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). On remand, the ALJ should explain how Dr. General's opinion supports the ALJ's assessment of Plaintiff's RFC and what weight he gave to the opinion. Additionally, the ALJ

should explain what role, if any, Dr. General's findings regarding the duration of Plaintiff's mental impairment played in the ALJ's evaluation of Dr. General's opinion.

### C.  ALJ's Assessment of Plaintiff's Credibility

It is not necessary for the Court to decide Plaintiff's arguments concerning the ALJ's assessment of Plaintiff's credibility regarding the limiting effects of his migraine headaches and back pain because these findings may be affected on remand by the ALJ's reconsideration of the opinions of Dr. Ellison and Dr. General.  *See Hulsey v. Astrue*, No. 07-5150, 2008 WL 2265260, at *3 (10th Cir. June 4, 2008) (unpublished); *Cagle v. Astrue*, No. 07-5107, 2008 WL 506289, at *7 (10th Cir. Feb. 25, 2008) (unpublished).  Therefore, the Court will not address these arguments.

## IV.  Conclusion

In conclusion, the Court **FINDS** that the ALJ's consideration of Dr. Ellison's medical opinions in the two MSS Forms, and his consideration of Dr. General's opinion did not follow correct legal standards.  It is not necessary for the Court to reach the alleged errors in assessing Plaintiff's credibility.  Accordingly, the Court will **GRANT** Plaintiff's *Motion to Reverse or Remand Decision of the Commissioner* (*Doc. 15*) and **REMAND** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse or Remand Decision of the Commissioner* (*Doc. 15*) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**

                                          **UNITED STATES MAGISTRATE JUDGE**
                                          **Presiding by Consent**